FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 AM 8: 47

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                      Respondent,<br><br>v.<br><br>PEDRO HERNANDEZ-LEON,<br>                      Appellant. | No. 42313-8-II<br><br><br>UNPUBLISHED OPINION |

VAN DEREN, J. — A jury returned verdicts finding Pedro Hernandez-Leon guilty of second degree child molestation and attempted second degree child molestation of JV[1] and guilty of one count of second degree child molestation of KV.[2] The jury also returned special verdicts on each of these convictions finding that Hernandez-Leon's offenses were part of an ongoing pattern of sexual abuse of the victims. Hernandez-Leon appeals his second degree child

_____

[1] We refer to the juvenile victims and their immediate family members by their initials to protect the victims' privacy.

[2] The jury also returned verdicts findings Hernandez-Leon not guilty of fourth degree assault with sexual motivation of AV, and not guilty of second degree child molestation of KV. The jury could not reach a verdict on the third degree rape of a child charge involving JV and the trial court declared a mistrial on that charge.

molestation convictions, asserting that the State's evidence was insufficient to support a finding of guilt on the charges.[3] We affirm.

FACTS

AV (born February 3, 1993), JV (born May 6, 1994), and KV (born May 22, 1997) are sisters. Their parents had divorced and the sisters lived with their mother, LV, during the school week and with their father, DV, on weekends. The defendant, Hernandez-Leon, is married to DV's sister, Jamie Hernandez.[4]

JV had a close relationship with her Aunt Jamie and would spend nights at her house in Longview, Washington. While at Jamie's house, Hernandez-Leon touched JV on her breasts and buttocks, beginning when JV was 12 years old. JV stated that Hernandez-Leon "would come up behind me and rub against my butt[ocks] or he would come up from behind me and rub across my chest." Report of Proceedings (RP) at 37. Hernandez-Leon touched JV for "[a] few seconds" in this manner on more than 10 occasions, sometimes sliding his hand across her chest and buttocks and other times keeping his hand still on those areas. Hernandez-Leon would also touch JV's buttocks when giving her a hug. When Hernandez-Leon touched JV on her breasts or buttocks, she would tell him to stop and that she did not like it, but Hernandez-Leon would "just shake his head and walk away." RP at 39. JV stated that Hernandez-Leon's inappropriate touching would occur when she was alone with Hernandez-Leon or when a lot of people were running in and out of the house. Hernandez-Leon touched JV in this manner for a couple of years, until she was 14 years old.

---

[3]Hernandez-Leon does not appear to appeal his attempted second degree assault conviction.

[4] Because Jamie Hernandez shares a last name with the defendant, we refer to Jamie as Aunt Jamie or by her first name for clarity.

JV described a couple of occasions where Hernandez-Leon touched her while she slept on his couch, stating, "I'd be sleeping and he would put his hands between my legs, or he would just start rubbing my body, my butt[ocks] and my chest." RP at 50-51. JV stated that when Hernandez-Leon touched her in this manner, she would pretend to be asleep.

JV also described an incident that occurred after she fell asleep in Hernandez-Leon's bed with Hernandez-Leon, Jamie, and her cousin.[5] JV stated that she awoke to Hernandez-Leon's hands rubbing back and forth on her hip and mid-thigh. Although she was awake, JV kept her eyes closed and pretended to sleep. JV stated that Hernandez-Leon eventually slid his hands into her shorts and digitally penetrated her vagina. JV said that after she had moved once while Hernandez-Leon digitally penetrated her, Hernandez-Leon told her to be quiet and to not wake up her Aunt Jamie.

JV also stated that over a period of three years, Hernandez-Leon would ask her "if [she] wanted to suck on his penis or if [she] would let him stick his tongue in [her] vagina or anything sexual." RP at 50. JV described one incident when Hernandez-Leon gestured to her suggesting that she perform oral sex on him. She described a second incident where Hernandez-Leon stood in the hallway and motioned for her to come into the bedroom with him. JV said that Hernandez-Leon appeared serious when he requested oral sex and that he would "storm off" angrily when she refused. RP at 53.

When JV was 15 years old, she told her girl friend, SG, that Hernandez-Leon had sexually assaulted her but asked SG not to tell anyone. SG stated that subsequent to JV's conversation with her, Hernandez-Leon invited her to his house three or four times when Jamie

---

[5] The incident in Hernandez-Leon's bed that JV described formed the basis for the State's third degree child rape charge, to which the jury could not render a verdict, and for which the trial court declared a mistrial.

3

was not going to be present. When SG told JV about Hernandez-Leon's invitations, JV became upset and screamed that the invitation was not funny and that Hernandez-Leon was serious.

SG attended JV's 16th birthday party at DV's house. While there, SG and Hernandez-Leon were standing on the porch when she felt Hernandez-Leon reach behind her and touch her buttocks. SG said that she had her telephone securely in her back pocket and that Hernandez-Leon's hand was around the telephone with his fingers touching her. Hernandez-Leon did not say anything to SG during the incident. SG walked away and told AV about the touching. When SG described the touching to AV, AV looked "extremely uncomfortable" and told SG that she should tell AV's parents about it. RP at 168. After Jamie learned about the incident, she and Hernandez-Leon approached SG and Hernandez-Leon told SG that he was not grabbing her buttocks and instead was putting her telephone back in her pocket because it was falling out.

After JV heard that Hernandez-Leon had touched SG on her buttocks, she became angry and felt guilty that she had not reported Hernandez-Leon's inappropriate touching earlier. JV then told her Aunt Jamie about Hernandez-Leon touching her on the breasts and buttocks. Jamie told JV not to tell her parents and that she would bring up the subject with them. Based on Jamie's reaction, JV did not tell her that Hernandez-Leon had digitally penetrated her vagina. Jamie apparently never reported the allegations to JV's parents.

Hernandez-Leon began touching KV inappropriately when she was 11 years old. KV stated that when Hernandez-Leon hugged her, he would "run his hands down [her] back and he[ would] grab [her] butt[ocks] sometimes," for a couple seconds until KV told him stop or would pull away from him. RP at 97. Hernandez-Leon generally did not say anything when KV would tell him to stop touching her, but on five or six occasions he told KV not to tell anyone else. On one occasion, KV was bending over retrieving something from a closet when Hernandez-Leon

4

approached her from behind, grabbed her waist, and pulled her closer to him. She could feel his penis against her buttocks for about three seconds. When she told Hernandez-Leon to stop, he said, "[S]hut up" and KV walked away. RP at 100.

KV also described an incident at Hernandez-Leon's house during her cousin's birthday party when Hernandez-Leon walked by her on his way to the bathroom and swiped his hand across her breast. At first, KV believed that Hernandez-Leon touched her breast accidentally, but then believed the touch was purposeful when he swiped his hands across her breast on his way out of the bathroom. Another touching incident occurred at her father's house on Thanksgiving, when Hernandez-Leon put his hand between her legs and touched her inner thigh while she sat on a countertop.

KV also said Hernandez-Leon put his tongue inside of her mouth:

> We were at his house, and my aunt and my cousin . . . went out to get the pizza, and I was watching TV on the couch and [Hernandez-Leon] was in his bedroom. And he came out and he kneeled right in front of me and he kissed me. And I thought it was just a regular kiss and—just like what my whole family does, like we just kiss each other real quick. And then the way he did it, he stuck his tongue in my mouth and I pulled away. And he's like, now you put your tongue in my mouth, and I said no. Then he went, ["Haw!"], and then walked away.

RP at 109.

AV reported that Hernandez-Leon had inappropriately touched her when she was 15 years old. Hernandez-Leon grabbed her buttocks for two or three seconds as she was getting up from the couch. Hernandez-Leon apologized and said it was an accident. It was not until AV told her mother about Hernandez-Leon grabbing SG that the parents asked their three daughters about Hernandez-Leon's inappropriate touching and reported the girls' allegations to the police.

The State charged Hernandez-Leon by amended information with fourth degree assault for his conduct involving AV, third degree child rape, second degree child molestation, and

attempted second degree child molestation for his conduct involving JV, and two counts of second degree child molestation for his conduct involving KV.

AV, JV, and KV testified at trial consistently with the facts as stated above. Jamie testified for the defense. Jamie stated that JV would sometimes sleep in her bed with Hernandez-Leon and their baby but said that Hernandez-Leon never slept next to JV. She testified that her family was "touchy feely" and would often hug, kiss, or pat each other. RP at 238-39. Jamie also testified that if Hernandez-Leon had asked her nieces if they wanted to have sex, he meant with other boys, and that he asked the question as a concerned uncle to assure that the girls did not get into trouble. She further testified that she had seen Hernandez-Leon poke and slap her nieces on the buttocks.

At trial, Hernandez-Leon denied touching JV's breasts, buttocks, or vagina and denied ever asking her to engage in oral sex. He also denied touching KV's buttocks when hugging her and denied touching her thigh at her father's house. He denied touching any of the girls from behind when they were bent over. Hernandez-Leon testified that although he would hug his nieces, kiss them on the mouth, and swat them on their buttocks, he never touched them for the purpose of sexual gratification. Hernandez-Leon admitted that the girls would tell him to stop when he swatted them, but said, "I didn't give them many, it was only, like, one." RP at 266. Hernandez-Leon denied that he had asked JV to have sex with him, indicating that he brought up the subject as a way to advise her against having sex when she was too young. Hernandez-Leon admitted that he stuck his tongue in KV's mouth but said he did it because he had just eaten a hot pepper and was joking around.

The jury found Hernandez-Leon guilty of second degree child molestation and attempted second degree child molestation of JV and guilty of one count of second degree child

molestation of KV. The jury also found by special verdict that his conduct on each of the three convictions was "part of an ongoing pattern of sexual abuse of the same victim." Clerk's Papers at 212, 215, 218. The jury found Hernandez-Leon not guilty of fourth degree assault with sexual motivation related to the charges involving AV and not guilty of a second count of second degree child molestation of KV. The jury could not reach a verdict on the charge of third degree rape of JV and the trial court declared a mistrial on that charge. Hernandez-Leon timely appeals his second degree child molestation convictions.

## ANALYSIS

Hernandez-Leon contends that the evidence is insufficient to support his second degree child molestation convictions because the State failed to present evidence that he touched JV and KV for the purpose of gratifying a sexual desire.[6] We disagree and affirm Hernandez-Leon's convictions.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

---

[6] Hernandez does not contend that the evidence is insufficient to support the remaining elements of his second degree child molestation convictions.

7

To convict Hernandez-Leon of second degree child molestation as charged under RCW 9A.44.086, the State had to prove beyond a reasonable doubt that he had "sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). In prosecutions for child molestation where the evidence shows that the accused touched the victim over clothing, the State is required to produce additional evidence to support a finding that the touching was done for the purpose of sexual gratification. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009); *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991).

Citing *Powell*, Hernandez-Leon asserts that the State failed to present sufficient evidence that his touching was for the purpose of sexual gratification. In *Powell*, the State presented evidence that on one occasion the defendant made a "fleeting touch" of the alleged victim's intimate parts over her clothing and stopped touching her when the alleged victim told him to stop; and that on a second occasion the defendant touched the alleged victim's thighs in a manner "susceptible of an innocent explanation." 62 Wn. App. at 918. Division Three of this court held that this evidence was insufficient to support an inference that the defendant had touched the alleged victim for the purpose of sexual gratification, reasoning that in "cases in which the evidence shows touching through clothing, or touching of intimate parts of the body other than the primary erogenous areas, the court have required some additional evidence of sexual gratification." *Powell*, 62 Wn. App. at 917.

This case is easily distinguishable from *Powell* and we hold that the State presented ample evidence to support the jury's finding that Hernandez-Leon touched his victim's for the

8

purpose of gratifying sexual desire. Here, in addition to evidence that Hernandez-Leon touched JV and KV on their intimate parts over their clothing, the State's evidence showed that the touching took place several times over a number of years—often outside the presence of others—and over the stated objections of the victims.

Additionally, with regard to his conduct against KV, when KV asked Hernandez-Leon to stop touching her inappropriately, he responded, "[S]hut up." RP at 100. He also told KV on multiple occasions not to tell anyone about his touching her. And, with regard to his conduct against JV, Hernandez-Leon touched her intimate parts over her clothing while she pretended to be asleep on the couch and often made sexually suggestive gestures at her and requested that she engage in oral sex. This evidence, when viewed in a light most favorable to the State, strongly supports the inference that Hernandez-Leon touched KV and JV for the purpose of gratifying his sexual desire and, thus, sufficient evidence supports Hernandez-Leon's convictions.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

VAN DEREN, J.

We concur:

PENOYAR, J.

WORSWICK, C.J.